UNITED STATES v. FIFTY BARRELS OF DISTILLED SPIRITS. See Case No. 15,-946.

## Case No. 15,091.

### UNITED STATES v. FIFTY BARRELS OF WHISKEY.

[11 Int. Rev. Rec. 94; 3 Am. Law T. Rep. (U. S. Cts.) 59.]

District Court, D. Kentucky. 1870.

INTERNAL REVENUE—REMOVAL OF SPIRITS—ENTRY IN BOOKS—HOW AND BY WHOM TO BE MADE.

1. The requisition of the 26th section of the internal revenue act of 1866 [14 Stat. 154], that there shall be entered daily the number of proof gallons purchased or received, of whom purchased or received, and the number of proof gallons sold or delivered, is complied with as to entries made before the act of 1868 [15 Stat. 125], if the entries, although made in a continuous manner without anything to designate to what the figures refer, are a true statement of such transactions.

2. The provision of the statute that requires the wholesale dealer and rectifier to make these entries daily does not demand that they should make them with their own hand. The duty may be delegated to a clerk, but the dealers and rectifiers are responsible if the proper entries are not made.

At law.

BALLARD, District Judge (charging jury). The information contains four counts; but the third count, being substantially the same as the fourth, has been abandoned by the attorney for the United States. I shall, therefore, direct your attention to the first, second, and fourth counts. The first and second counts are founded upon the 45th section of the act of July 13, 1866. This section provides: "That any person who shall remove any distilled spirits from the place where the same are distilled otherwise than into a bonded warehouse as provided by law shall be liable to a fine," etc. "All dis-

tilled spirits so removed, and all distilled spirits found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid, shall be forfeited to the United States," etc. The first count charges in substance that the 50 barrels of whiskey in contest were found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid. The second count charges that the said distilled spirits were removed from the place where the same were distilled otherwise than into a bonded warehouse as provided by law. The fourth count I shall notice hereafter.

In order that you may understand the first and second counts, it is proper for me to say that the statute provides that all distilled spirits, when they are withdrawn from the cistern which the law requires to be connected with every distillery, shall be immediately inspected, branded, and removed to a bonded warehouse, either class A or class B. They cannot be taken to any other place. There is no way in which the tax can be paid on them until they are in a bonded warehouse. You see, then, why it is made an offence to remove spirits from a distillery to any other place than to a bonded warehouse. When the spirits are once in a bonded warehouse, they may be removed therefrom, after being inspected and gauged, on bond for export, on bond for transportation from one warehouse to another, or on bond for redistillation or rectification, or for changing into other packages, or on the payment of the tax. In case they are removed for redistillation, rectification, or change into other packages, the bond requires them to be returned into the same warehouse. When they are removed from or to a warehouse, they are required to be inspected, gauged, and branded by a revenue inspector. Of course they may be again taken from the warehouse on payment of the tax thereon. And now you see why spirits, found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid, are forfeited.

It appears from the evidence, that on the 31st December, 1867, there were 40 barrels of highwines removed from the distillery of Eastman & Wood, in Peoria, Illinois, to the bonded warehouse, class B, of one Zell, after the same had been inspected, gauged, proved, and marked as required by law. It also appears that these same 40 barrels were, on the same day, regularly removed from the warehouse on the payment of the tax. These facts are established beyond controversy, for they are proven by the government officers who knew the facts and by the production of the proper vouchers. Now the claimants insist that the 50 barrels in controversy are rectified spirits and are the product of the 40 barrels above mentioned. If they have established this to your satisfaction, of course your verdict must be for them on the first and second counts. If, on the other hand, you should come to the conclusion that the 50 barrels are not rectified spirits, or are not the product of the 40—nay, if it is not established to your satisfaction that they are, you must find for the United States. The burden of proof is on the claimants to show that the requirements of law have been complied with. This is the provision of the statute, and it is founded on the principle that it is always in the power of the owner of spirits to trace them and to show that the requirements of law respecting them have been complied with. The burden being on the claimants, the case must not be left in equipoise. The property being found outside of a bonded warehouse, if the claimants had offered no evidence, your verdict must have been for the United States, and therefore your verdict must be in the same way unless you believe from the evidence adduced by the claimants, or rather from the whole evidence in the case, that produced by the claimants and by the United States also, that these spirits are the product of the 40 barrels removed from the distillery of Eastman & Wood on December 31, 1867, to the bonded warehouse of Zell, and removed from the warehouse on the same day on the payment of tax. You must consider the whole evidence in the case bearing on these points, and, after considering it, if you are satisfied that the spirits are the product of the 40 barrels, your verdict will be for the claimants on these counts, or for the United States if you are not so satisfied.

On the issue tendered on these counts, the claimants have produced one witness, Mr. Dunn, who has been examined before you and read two depositions. One of these depositions was given by the claimant Warner, and the other by Mr. Funke, United States inspector. All that Mr. Funke testifies to is the identity of the barrels seized with the like number he inspected for the claimants at their rectifying and alcohol establishment in Peoria, Illinois, on the 8th of January, 1868. He does not know or pretend to know anything in respect to the spirits in these barrels being the product of the 40 barrels, on which the tax was paid. The testimony on this point comes solely from the two witnesses, Warner and Dunn. These witnesses do swear positively that they saw the 40 barrels dumped into the receiving cisterns or rectifying tubs of Eastman & Warner, and that they saw the product withdrawn therefrom and put into the barrels now in controversy. But the district attorney insists that these witnesses are mistaken or are not to be credited. He relies upon many facts and circumstances, of the weight and force of which you must

judge. First. That, notwithstanding the haste with which the 40 barrels were removed from the bonded warehouse (you will remember they were removed on the same day they were put into the warehouse), they were retained in the rectifying establishment, according to the testimony produced by the claimants, at least 8 days. Second. That it is not reasonable that the taxes would have been paid on the spirits if they were intended for rectification. It is a fact that the spirits, when withdrawn from the warehouse, amounted to 2,435 gallons, that the claimants might have removed the same in bond, and upon the return of the same they might have been credited by 3 per cent. as lost in the process of rectification. Now, 3 per cent. of 2,435 gallons is 73 gallons. On this amount the claimants might have lawfully escaped the tax by removing the spirits in bond, instead of paying the tax in the first instance. But there was nothing unlawful in rectifying the spirits after the tax was paid on them. The owner had the right to do with them as he pleased, and I believe it has been not an uncommon practice to pay the taxes on spirits in the first instance, that is, before rectification. Third. That the circumstances attending the alleged sale of the spirits are peculiar and suspicious. Fourth. That it is incredible that the spirits were sold as claimants insist at $2.28 per gallon, when spirits of the same kind rectified by the same parties, had been sold to the same party only a short time before at $1.90 per gallon. Fifth. That the manner of shipment is suspicious. You will remember the shipment was to W. L. Weller on account of T. W. Weller, and that there is no such person as T. W. Weller. Sixth. That the spirits were never rectified at all, and two experts have been introduced, who, you will recollect, expressed their opinion on this subject. Seventh. That there are discrepancies between Warner and Dunn and between Dunn's deposition and his testimony here, which render the testimony of these parties unreliable. Eighth. That Warner is interested in the result of the suit, that Dunn was his clerk, and that these circumstances affect their credibility.

Your own memory will doubtless supply other circumstances. You must consider all these circumstances and all others which the evidence has developed, and the explanations which claimants have offered respecting them. You must judge of the credibility of the witnesses. You should not arbitrarily reject the testimony of any witness. If he had opportunity of knowing what he testifies, and he testifies to nothing which is irrational, improbable, or which taxes your credulity, if he has delivered his testimony in a credible manner, if his character is unimpeached and his testimony not contradicted, both common sense and the law suggest that he should be credited. But, if he is contradicted, if his story is improbable, if his manner of testifying is not straightforward, if he has contradicted himself, you are authorized to disbelieve him, and if he is interested in the cause it affects his credibility. I am not attempting to tell you what is the character of the testimony before you. This is not my province. I have been simply endeavoring to give you some of the rules which the law has prescribed for determining the credibility of witnesses. Again, when two witnesses make apparently contradictory statements, it is not to be assumed that either witness has sworn falsely, but rather that one is mistaken. If the witnesses are equally credible and one may be mistaken, without imputing to him an intention to state a falsehood, and the statement of the other cannot be untrue without imputing to him wilful perjury, the rule is that the statement of the latter is rather to be taken; so a statement of a witness based upon knowledge derived from sight is ordinarily more reliable than a statement which is a mere expression of an opinion. But it may happen that the jury would be authorized to receive the latter statement, as in case the first comes from an unreliable witness or one who is contradicted by other testimony. In fact, gentlemen, the rules upon this subject are the dictates of common sense, and your judgment will teach you better what testimony to believe and what to disbelieve than any rule which can be laid down by the court.

I will now proceed to the fourth count. This count is founded upon the 26th section of the act of 1866. This section provides "that every rectifier or wholesale dealer in distilled spirits shall enter daily, in a book or books kept for the purpose, under such rules and regulations as the commissioner of internal revenue may prescribe, the number of proof gallons of spirits purchased or received, of whom purchased and received, and the number of proof gallons sold or delivered; and every rectifier or wholesale dealer who shall neglect or refuse to keep such record shall forfeit all spirits in his possession," etc. This count charges in substance that heretofore, to wit: on the 31st December, 1867, the spirits seized were in the possession of Eastman & Warner, who were then and there rectifiers of distilled spirits, and did purchase and receive and sell and deliver large quantities of distilled spirits; and that while said fifty barrels of spirits were in their possession they did neglect to enter daily, in a book kept for the purpose, the number of proof gallons of spirits purchased and received, of whom purchased and received, and the number of proof gallons sold and delivered, etc. The claimants have produced the book which Eastman & Warner professed to have kept. It does not appear from this book by whom it was kept or to whom it belongs. At the top of the left-hand page are written the words "Spirits purchased free and in bond," and at the top of the right-hand page are written

the words "Spirits sold and bonded." Then on the left page are written, in a continuous account—First, a date; second, the name of some person; third, figures constituting a small number; and fourth, figures constituting a large number, which latter number is from fifty to sixty times the amount of the preceding number. There is nothing at the top of the page or at the head of the columns to indicate what these figures mean; but the witness introduced by claimants proves that one of the numbers indicates the number of packages, and the other the proof gallons. To this evidence the district attorney has objected. He insists that the book should show on its face whose it is, and that the entries themselves should show distinctly what they mean, and that parol proof cannot be used to explain them. There is much force in this objection; but as the commissioner had, at the date of these entries, adopted no rules or regulations for making them, except that they should be made in a continuous account, I am inclined to the opinion that the requisition that there shall be entered daily the number of proof gallons purchased or received, is complied with when it is shown that the entry made truly expresses the number of proof gallons purchased or received, and that it was made on the day of purchase or receipt, although there is nothing connected with the entry in the book to show that it refers to proof gallons any more than it does to wine gallons, or in fact that it refers to "gallons" at all. If the entries as made are respectively the true numbers of proof gallons purchased or received on the given days, if they contain respectively the true name of the person from whom purchased or received, and if they are respectively the true number of proof gallons sold or delivered, it seems to me the statute is literally complied with. There is nothing in the act of 1866, or in the regulations prescribed by the commissioner under it, which requires these entries to be made in the columns with appropriate headings, as seems to be contemplated by the act of 1868 and the regulations under it. I therefore instruct you, that if this is the book which Eastman & Warner kept for the purpose contemplated by the 26th section of the act of 1866, as before explained, and they did enter daily thereon the number of proof gallons purchased or received, of whom purchased and received, and the number of proof gallons sold or delivered, although they have to resort to parol testimony to explain the entries to the extent above indicated, they have substantially complied with the statute.

Again, it appears from the testimony that these entries were not made by Eastman & Warner personally, but by their clerk, and it is insisted by the district attorney that this is not a compliance with the statute. He insists that the statute requires that the entries shall be made by the rectifier himself, and that the making of them by a clerk is not a satisfaction of the law. To sustain his position he has called my attention to the difference between the language of the twenty-sixth section of the act of 1866 and the language of the forty-ninth section of the same act, as well as of the sixty-eighth section of the act of 1864 [13 Stat. 248], and the twenty-fifth section of the act of 1867 [14 Stat. 483], and the forty-fifth section of the act of 1868, and he has also shown me the opinion of Judge Blatchford on this point. Judge Blatchford does seem to say that the act of 1868 requires the rectifier and wholesale dealer to make these entries personally, and that they cannot delegate the making of them to another, and I do not see any substantial difference affecting this question between the act of 1868 and the act of 1866. But I am not certain that Judge Blatchford means more than that the rectifier or wholesale dealer cannot excuse himself from responsibility for the proper entries not being made, by showing that he employed some one specially to make them, and directed the person employed to make them. If this is what he means, I entirely concur with him. The entries must, undoubtedly, be made, or the rectifier or the wholesale dealer will incur the penalty; but it seems to me wholly immaterial by whom they are made. This is not the proper occasion for the discussion of this question; but I must say, however, that it would require something much more explicit than the difference between the language of the several sections of the several statutes before mentioned to induce me to hold that the provision of the statute which requires the wholesale dealer and rectifier to make certain entries daily means that they shall make them with their own hand. The consequences of such a construction are too serious. It would preclude every person who cannot write from being either a rectifier of or a wholesale dealer in distilled spirits. Every rectifier or wholesale dealer would be obliged to suspend business when sick or absent from his place of business. No, I cannot adopt this construction of the statute. The general rule of law is, that what a man does by another he does himself, and there must be something peculiar in the nature of the duty or specific in the requisition to demand more than the general rule exacts. In this case there is nothing, in my opinion, either in the nature of the duty exacted or in the language prescribing it, which requires anything more. I perceive no essential difference between the words that the "rectifier shall enter daily" and the "rectifier shall enter or cause to be entered daily." They are simply different forms of expressing the same thing, and every purpose of the statute is as well accomplished by the rectifier causing the entries to be made as by his making them himself. I therefore instruct you that it is wholly immaterial whether the entries were made by Eastman or Warner or their clerk. If the proper entries were in fact made, the law is satisfied. But it appears from the claimants' own witness that the book does not contain a correct entry of

the number of proof gallons sold and delivered by them. The book shows as many gallons sold and delivered as were purchased, and it is conceded that there was a loss of at least three per cent. by the processes of rectification and redistillation. Mr. Dunn, who made the entries, tells you that he did not attempt to enter in this account the correct number of proof gallons of alcohol sold or returned to the bonded warehouse, that he entered as sold or returned the same number as was purchased or received, making no deduction for loss by evaporation in the process of redistillation, which he says was at least three per cent. It is conceded that the entry made January 2, 1868, is incorrect in this respect, and that it was made while the fifty barrels. now in controversy were in possession of the parties whose duty it was to make the entries. I agree with the district attorney that for this cause the spirits are forfeited, and, as there is no controversy respecting the facts, your verdict must be for the United States on the fourth count. I have considered the proposition contended for by claimants' counsel, that the statute does not require spirits received by a rectifier in bond and returned in bond to be entered at all. They insist that all the statute requires to be entered are the spirits purchased and sold. But such has not been its construction, nor is it, I think, its true meaning. I think the statute requires the rectifier and wholesale dealer to make the entries respecting all spirits which come into their respective establishments from all sources whatever.

It may seem to you, gentlemen, hard that these spirits should be forfeited because the claimants entered in their books more proof gallons of spirits as returned to the bonded warehouse than were actually so returned. But the law, in requiring the entries to be made, it seems to me, demands that they be accurate. The statute does not make the forfeiture depend upon the entry being fraudulent or wilfully false, but upon the neglect or refusal to make the entry—that is, the correct entry, as I understand it. We cannot fritter away the statute because it seems harsh. The remedy for harsh legislation belongs to the legislative department. The judiciary have nothing to do but to interpret and enforce the statutes as they find them. But, if these were the only grounds of forfeiture, it might be my duty to certify the facts to the secretary of the treasury and his duty to remit the forfeiture. It is therefore desired by all parties that you shall, in your verdict, respond to the issue on each count of the information. As before stated, the third count has been abandoned, and your verdict must be for the United States on the fourth count, but it will be for the claimants or for the United States on the first and second counts accordingly as you shall find, upon the principles before announced, that the spirits in controversy are or are not rectified spirits, and are or are not the product of the forty bar-

rels removed from the distillery of Eastman & Wood, December 31, 1868, to the bonded warehouse of Zell, and removed therefrom upon the same day. The whole controversy, I repeat, on these counts is reduced to a very simple inquiry. The burden of proof being on the claimants, they have staked the whole case on the proposition that the spirits in controversy are rectified spirits, and are the product of the forty barrels before mentioned. If they have proven this fact to your satisfaction, you must find for the claimants on these counts; if they have not, or if you are not satisfied after scanning the whole evidence, your verdict must be for the United States.